ROBERT E. ROBINSON, Plaintiff-Appellant, *v.* COOK COUNTY POLICE & CORRECTIONS MERIT BOARD *et al.*, Defendants-Appellees.

First District (2nd Division)    No. 81-1273

Opinion filed May 18, 1982.—Rehearing denied June 17, 1982.

Michael H. Saken, of Chicago, for appellant.

Bernard Carey, State's Attorney, of Chicago (Paul P. Biebel, Jr., and Susan Condon, Assistant State's Attorneys, of counsel), for the People.

JUSTICE PERLIN delivered the opinion of the court:

The sheriff of Cook County filed a complaint with the Cook County Police and Corrections Merit Board (Board) against plaintiff, Robert Robinson (Robinson), a deputy sheriff in the Cook County Sheriff's Police Department. The complaint sought discharge of Robinson for alleged violations of certain rules and regulations of the Board. After an administrative hearing, the Board entered a finding that Robinson was guilty of the violations charged and ordered him discharged. Robinson appealed the Board's order to the circuit court pursuant to section 13 of the Administrative Review Act. (Ill. Rev. Stat. 1977, ch. 110, par. 276.) On review the circuit court affirmed the Board's finding as to Robinson's misconduct but remanded the matter for reconsideration of the discharge sanction "in light of [the circuit] court's opinion that said sanction is unduly harsh." On remand the Board affirmed its discharge order. The circuit court then affirmed the Board's order including the sanction of discharge, and plaintiff appeals from that determination raising the following issues for our review: (1) whether the Board's order is invalid because it fails to include any findings of fact; (2) whether the Board's findings were against the manifest weight of the evidence; and (3) whether the Board's findings constitute sufficient cause to warrant discharge.

For the reasons hereinafter stated, we affirm.

The testimony on the substantive issues before the Board was provided by Janet Frohlich (Frohlich), the complaining witness, and Robinson. Robinson also presented testimony of two reputation witnesses.

At the hearing on November 14, 1978, Frohlich, a waitress in a bar and lounge in Oak Forest, Illinois, testified to the following: that at ap-

proximately 4 a.m. on June 26, 1978, Frohlich was driving home from work when Robinson stopped her because the vehicle she was driving had a burned-out headlight. As Robinson approached her vehicle, Frohlich told him that she knew about the headlight because another police officer had just warned her about it. When Robinson asked to see her driver's license, Frohlich told him that she had lost it. Robinson then informed Frohlich that he would have to take her to the Glenwood police station. Frohlich protested because she preferred going to the Tinley Park station which was closer to the point of the traffic stop, but Robinson insisted on going to Glenwood because he "worked out" of that station. When Frohlich asked if she could park her vehicle in a safe place, Robinson suggested that she park it at her apartment. Frohlich agreed to this suggestion, but as she was driving her car toward her apartment, she changed her mind and decided to park in a parking lot adjacent to a 7-Eleven store located approximately one-half block from the point of the stop. Robinson followed Frohlich in his squad car and parked behind her. Their vehicles were parked in front of the store, and the cashier was visible through the store window. The "Mars" lights, headlights and interior lights of the squad car were left on.

Frohlich got into the back seat of the police car while Robinson sat behind the steering wheel. She testified that in response to his questions she gave him her name and address and she told him that she was separated from her husband. He told her that he would have to give her citations for driving without a license, for driving with only one headlight and for failing to report a change of address. Robinson then asked her whether she had any children. When she told him she had two, Robinson said he was going to give her a "pass" but that in return for the "pass" she owed him a "big favor." Robinson repeated his statement and added, "Do you know what I mean by a big favor?" She responded, "I know what you mean." Robinson then handed her a slip of paper bearing his name and home telephone number and told her to call him by noon the next day or she would be in "big trouble." She said she would try to call.

Robinson let Frohlich out of the back seat of the squad car and she noted the car's license number. She drove home and reported the incident to the police. She testified that she was intimidated and frightened by Robinson and that she thought he intended to elicit sexual favors from her in exchange for giving her a "pass."

Robinson's testimony substantially corroborated Frohlich's version of the details of their encounter. He denied, however, that he initiated the discussion concerning Frohlich's marital status and children. He testified that Frohlich volunteered this information in an apparent attempt to evoke his sympathy and to avoid being issued the citations. After learning of Frohlich's family, Robinson felt sorry for her and decided to give her a

"pass." He conceded that he told Frohlich that she owed him a "big favor" in exchange for the "pass," but he testified that the "big favor" he expected of Frohlich was that she would become an informant for him. He believed Frohlich would be a useful informant because she worked late hours in a bar and he thought she would be able to collect information from the bar's clientele. Robinson admitted that he had never been in this particular bar and that he did not know any of its customers.

On cross-examination Robinson acknowledged that he violated department procedures regarding the recruitment of informants by failing to inform his watch commander of his efforts. He also admitted that he failed to radio Frohlich's license number to headquarters even though it was standard operating procedure to do so.

Cook County Sheriff's Police Sergeants Hillburn Turner and Laurence Evans, two of Robinson's supervisors, testified as character witnesses for Robinson. Both stated that Robinson had been a deputy sheriff with the Cook County Sheriff's Department for two years and that he had a good reputation for truthfulness and was known as a good police officer. Evans stated further that in his opinion Robinson's conduct was "inappropriate" but admitted that at times he also had not called in license numbers, had given his home phone number to informants and had neglected departmental procedures regarding informants. Both character witnesses testified that Robinson had been suspended previously for a violation of departmental rules. Although the record is unclear regarding some details of Robinson's prior misconduct, it appears that on February 28, 1978, only five months earlier, Robinson caused a traffic accident while driving a marked police car under the influence of intoxicating liquors. For this violation Robinson received a 29-day suspension.

After hearing all of the testimony, the Board found that Robinson had violated the following rules and regulations of the Cook County Sheriff's Police Department:

"Chapter 14:

14.4 All officers shall employ every lawful means at their disposal in the investigation, arrest and prosecution of any person observed or known to be violating or have violated any statute or ordinance pertaining to criminal matters, traffic offenses or vice activities.

14.12 Any officer of the Department who shall in the performance of his official duties display reluctance to properly perform his assigned duties, or who acts in a manner tending to bring discredit upon himself or the Department, or who fails to assume responsibility or exercise diligence, intelligence and interest in the pursuit of his duties, or whose actions or performance in a position, rank or assignment are below acceptable standards, may be

deemed incompetent and shall be subject to dismissal from the Department.

Chapter 15:

15.1 Officers and civilians shall conduct themselves in their private and professional lives in such a manner as to avoid bringing themselves or the Department into disrepute.

Chapter 18:

18.11 Conduct unbecoming an officer or civilian of the Department.

18.15 Incapacity or inefficiency in the performance of duty."

## I

Robinson contends that the Board's order is invalid and must be reversed because the order itself does not recite the findings of fact which form the basis for the Board's decision.

The Board responds: (1) that Robinson has effectively waived any alleged defects in the discharge order by asking this court to review the record and to reverse the order on its merits; and (2) in the alternative the Board maintains that a court of review may look to the specific facts alleged in the written charges to supplement the Board's order.

■■ With respect to the Board's waiver argument, we note that the law is clear that a litigant does not waive any defects in a discharge order merely by asking this court to review that order's sufficiency. *Reinhardt v. Board of Education* (1975), 61 Ill. 2d 101, 329 N.E.2d 218.

■■ As to Robinson's contention that the order is invalid because the order itself does not recite the Board's findings of fact, it is firmly established that where an agency's order states that an individual has been found guilty "as charged," the order is held to incorporate by reference the specific facts that are articulated in the written charges. (*Kozsdiy v. O'Fallon Board of Police & Fire Commissioners* (1975), 31 Ill. App. 3d 173, 177, 334 N.E.2d 325; *Reich v. Board of Fire & Police Commissioners* (1973), 13 Ill. App. 3d 1031, 1034, 301 N.E.2d 501.) In the instant case the Board's order stated that Robinson violated certain rules of conduct "as charged." Therefore, the facts set forth in the written charges are considered to be a part of the Board's order. Since those facts clearly disclose the basis for the Board's decision, we find that the Board's order contains sufficient findings of fact.

## II

Plaintiff next maintains that the Board's findings were against the manifest weight of the evidence.

On administrative review, the court's function is to ascertain whether the findings of the agency are supported by substantial evidence in the

record and are not contrary to the manifest weight of the evidence. (*Fox v. Illinois Civil Service Com.* (1978), 66 Ill. App. 3d 381, 383 N.E.2d 1201.) Findings of fact by an administrative agency are *prima facie* true and correct. (Ill. Rev. Stat. 1977, ch. 110, par. 274.) In order to conclude that a particular finding is against the manifest weight of the evidence, the reviewing court must be satisfied that an opposite conclusion is clearly evident. (*Kelly v. Police Board* (1975), 25 Ill. App. 3d 559, 323 N.E.2d 624.) Furthermore, a reviewing court may not weigh the credibility of the witnesses or substitute its judgment for that of the agency. *Fox v. Illinois Civil Service Com.* (1978), 66 Ill. App. 3d 381, 387.

■■ We believe that Robinson's argument deserves scant consideration here. The record shows that Robinson himself substantially corroborated Frohlich's testimony. The only disputed material fact was the intended meaning of the words "big favor." The resolution of this factual issue required the Board's evaluation of the credibility of the witnesses, and on appeal we will not disturb the Board's findings which follow therefrom.

Accordingly, we cannot say that the Board's findings were against the manifest weight of the evidence.

### III

Finally, Robinson contends that the Board's findings of fact do not constitute sufficient cause to warrant the sanction of discharge.

■■ Illinois courts have defined "cause" as some substantial shortcoming which renders the employee's continuance in office in some way detrimental to the discipline and efficiency of the service and which the law and sound public opinion recognize as good cause for his no longer holding the position. (*Kreiser v. Police Board* (1976), 40 Ill. App. 3d 436, 352 N.E.2d 389, *aff'd and remanded* (1977), 69 Ill. 2d 27.) Unlike findings of fact, agency determinations of cause are not *prima facie* true and correct but are subject to judicial review. (*Caliendo v. Goodrich* (1975), 34 Ill. App. 3d 1072, 340 N.E.2d 560.) While courts should not assume the function of a super-commission in determining what constitutes sufficient cause (*Fox v. Illinois Civil Service Com.* (1978), 66 Ill. App. 3d 381, 383 N.E.2d 1201), it is their function to review charges brought for discharge to determine if they are so trivial as to be unreasonable or arbitrary, if the agency acted on evidence that fairly tended to sustain the charges and if the agency's decision sufficiently relates to the requirements of service. (*DeGrazio v. Civil Service Com.* (1964), 31 Ill. 2d 482, 489, 202 N.E.2d 522; *Department of Mental Health & Developmental Disabilities v. Civil Service Com.* (1982), 103 Ill. App. 3d 954, 957, 431 N.E.2d 1330, 1333.) In weighing whether cause for discharge exists, therefore, manifest weight of the evidence is not the applicable standard of review. The agency's determination to discharge may be overturned if such determination is:

(1) based on trivialities or is arbitrary or unreasonable; (2) based on evidence that does not sustain the charges; or (3) not sufficiently related to the requirements of the service. *DeGrazio*; *Fox*.

Robinson contends that the maximum sanction of discharge imposed upon him should be reduced because it was unduly harsh and hence unreasonable. Robinson refers us to a number of appellate decisions in which the courts have found the administrative penalties too severe and subject to reduction, and he places particular emphasis upon *Washington v. Civil Service Com.* (1981), 98 Ill. App. 3d 49, 423 N.E.2d 1136. In *Washington* a police officer was found guilty of soliciting a female arrestee for sex in exchange for leniency and was suspended by the commission for 29 days. The appellate court upheld the commission's finding regarding the officer's misconduct but *sua sponte* ruled that the 29-day suspension was too harsh and reduced the punishment to a five day suspension. Robinson argues that because the solicitation in *Washington* occurred under circumstances allegedly more egregious than the solicitation in the instant case, the sanction imposed here should be reduced. We do not choose to adapt the *Washington* opinion to the instant case, and we believe that reviewing courts must consider the particular circumstances of each case on its own merits. *Fox*.

■■ Our review of the record in the instant case leaves us with no doubt that the evidence sustained the charges and that Robinson's record of misconduct evinced substantial shortcomings which rendered his continuance in office detrimental to the appropriate discipline and efficiency of the Sheriff's department. His attempt to solicit sexual favors in exchange for leniency, and his failure to comply with the rules and regulations of the sheriff's office regarding the questioning and arrest of citizens charged with violating the law manifested an attitude and an absence of professionalism that could only bring the sheriff's office into disrepute. Moreover, it is significant to note that this is the second time in just five months that Robinson was disciplined for a serious violation of department rules. Repeated violations within such a short period of time by a deputy sheriff with only two years of service indicates a blatant disregard of duty. We conclude that Robinson's actions were such as the law and sound public opinion would recognize as good cause for his no longer occupying a position as a deputy sheriff. Accordingly, we affirm the order of the circuit court which upheld the Board's order of discharge.

Affirmed.

STAMOS, P. J., and DOWNING, J., concur.