FIRST DIVISION
March 31, 2011

No. 1-09-1272


MARISOL RODRIGUEZ,                          )       Appeal from the
                                            )       Circuit Court of
                                            )       Cook County.
    Plaintiff-Appellant,            )
                                            )
                                            )
    v.                              )       No. 08 CH 32743
                                            )
                                            )
JODY P. WEIS, Superintendent of             )
Police of the City of Chicago, and          )
the POLICE BOARD OF THE CITY OF             )
CHICAGO,                                     )
                                            )       Honorable
                                            )       William O. Maki,
    Defendants-Appellees.           )       Judge Presiding.


      PRESIDING JUSTICE HALL delivered the judgment of the court, with opinion. Justices Hoffman and Rochford concurred in the judgment and opinion.

      Plaintiff Marisol Rodriguez appeals from a circuit court order affirming a decision of the Police Board of the City of Chicago (Board) discharging her from her position as a Chicago police officer. The Board determined that plaintiff altered certain documents (return-to-work status reports) and submitted them to the Chicago police department's medical services section (hereinafter, Medical Services), falsely representing that a physician had recommended that her work duties be limited due to injury.

      The Board concluded that plaintiff's conduct violated the following rules of article V of the rules and regulations of the

No. 1-09-1272

Chicago police department (Department): Rule 2, which prohibits "[a]ny action or conduct which impedes the Department's efforts to achieve its policy and goals or brings discredit upon the Department," and Rule 14, which prohibits "making a false report, written or oral."

Plaintiff sought administrative review of the Board's decision in the circuit court. The circuit court affirmed the Board's decision. Plaintiff appeals. We affirm.

BACKGROUND

On May 14, 2008, the superintendent of police filed charges with the Board against plaintiff, recommending that she be discharged from her position as a Chicago police officer for violating Department Rules 2 and 14. The Board conducted a two-day hearing on the matter at which the following evidence was presented.

Plaintiff worked routine patrol duty at the 20th District. In June 2006, she was reassigned to a light-duty desk job due to alleged problems with her right hand. Plaintiff maintained she was left-handed, but that she used her right hand to fire her service weapon.

Dr. David Garelick, an orthopedic surgeon at the Illinois Bone and Joint Institute's Desilva Center, first examined plaintiff on July 14, 2006. Plaintiff complained of numbness and tingling in her right hand. She claimed that her symptoms were aggravated when she typed.

-2-

Plaintiff was initially diagnosed as suffering from possible carpal tunnel syndrome. However, after failing to identify a specific cause of plaintiff's symptoms, the doctor scheduled plaintiff to undergo an electromyogram (EMG)/nerve conduction test. The doctor also completed a return-to-work status report, stating that plaintiff could return to work, but with limited repetitive movement of her right hand, no strenuous activity with her right hand, and no typing. Plaintiff was given an appointment to return on July 28, 2006.

On July 28, 2006, Dr. Garelick examined plaintiff and discussed the results of her EMG test. The test results were normal. Again, the doctor was unable to identify a specific cause of plaintiff's symptoms. He determined that there was nothing further he could do for plaintiff within his specialty of orthopedics. He discharged plaintiff from his care and referred her to a neurologist.

Dr. Garelick testified that plaintiff requested a doctor's note recommending that she be placed on light duty for six months. The doctor responded that he was uncomfortable making such a recommendation in light of his inability to identify a cause of plaintiff's symptoms. Instead, he agreed to extend her light duty a week or two, to give her time see the neurologist. The doctor also completed another return-to-work status report, stating that plaintiff could return to work, but that she should be limited to mostly left-handed work.

During his testimony, Dr. Garelick was shown the return-to-work status reports from plaintiff's file at Medical Services. The doctor noted that the reports contained alterations and extra notations not found on the copies of the reports retained in his office files.

Dr. Garelick observed that on his copy of the return-to-work status report for July 14, 2006, he had only recommended that plaintiff's duties include "no typing," but that the copy of the report from the Medical Services file had been altered to include the word "writing" after "no typing." The doctor further noted that on his copy of the return-to-work status report for July 28, 2006, the line adjacent to "Next Appointment" had been left blank, but that the copy of the report from the Medical Services file had been altered to list the "Next Appointment" as "8/16/06." The report had also been altered to recommend that plaintiff's light duties be extended for "11-12" weeks, instead of the "1-2" weeks the doctor had written.

In addition, the doctor noted that on his copy of the return-to-work status report for July 28, 2006, he had not written anything on the line next to "Other (specify)," and he had not put a check mark on the line next to "Limited pushing/pulling." However, the copy of the report taken from the Medical Services file showed that someone had altered the report by putting a check mark on the line next to "Limited pushing/pulling," and by inserting the phrase "no writing, no

typing" on the line next to "Other (specify)."

Dr. Garelick testified that he did not alter the return-to-work status reports and he did not authorize anyone else to alter them. The doctor testified that if he had made such alterations, a new form would have been used and a carbon copy retained in plaintiff's office file. He testified that the practice in his office is to prepare duplicate return-to-work status reports, where the original is given to the patient to take back to the employer and the carbon copy is retained in the patient's office file.

In October 2006, Officer Erica Jenkins, a registered nurse and case manager at Medical Services, informed plaintiff that she needed to submit an updated return-to-work status report because her light-duty assignment would soon expire. Plaintiff contacted Dr. Garelick's office for an appointment, but was told no appointment was available. Plaintiff testified that she then told someone in the doctor's office that if she could not get an appointment, she at least needed the doctor to submit a report with recommended work restrictions. Plaintiff was informed that the recommendation would be for her to return to full duty.

Officer Jenkins testified that shortly after October 18, 2006, plaintiff returned to active duty status, based on a report from Dr. Garelick stating that plaintiff was cleared to return to work with no restrictions. On October 25, 2006, plaintiff submitted a note from Dr. Byung-Ho Yu of the First Korean

Multispecialty Clinic, requesting that she be placed on light duty for asthma. Plaintiff testified that she had previously submitted similar notes from Dr. Yu in August 2006, and later in November 2006.

Officer Mary L. Zia, a clerk in Medical Services, testified that in November 2006, plaintiff was ordered to have her asthma diagnosis confirmed by an independent medical pulmonologist approved by the City. Officer Zia testified that she was reviewing plaintiff's file in order to compile a list of pulmonologists plaintiff could choose from, when she noticed that a return-to-work status report from Dr. Garelick had extended plaintiff's light duty for 11 to 12 weeks. The officer believed that such an extension period was not normal.

After conferring with a supervisor, Officer Zia contacted Dr. Garelick's office and requested them to fax over copies of plaintiff's return-to-work status reports from July 14 and 28, 2006. Upon receipt of the reports, the officer noticed discrepancies between the faxed versions and those maintained in plaintiff's file at Medical Services.

Officer Zia observed that the return-to-work status report for July 28, 2006, from the doctor's office, only extended plaintiff's light-duty status for "1-2" weeks, rather than the "11-12" weeks listed on the report from plaintiff's file at Medical Services. The officer further observed that the only duty modification listed on the return-to-work status report for

July 28, 2006, from the doctor's office, was that plaintiff should perform mostly or only left-handed work. However, on the copy of the report from plaintiff's file at Medical Services, someone had altered the report by putting a check mark on the line next to "Other (specify)," and adding the phrase "no writing, no typing."

The report was also altered to indicate that plaintiff's duties should include limited pushing and pulling. The officer further noticed that where the doctor's copy of the return-to-work status report for July 14, 2006, listed "no typing" as a restriction, the copy of the report from plaintiff's file at Medical Services had been altered to list "no typing, writing," as restrictions.

In December 2006, plaintiff was placed on light duty for her asthma. She remained on light duty until her suspension on May 15, 2008.

On August 21, 2008, the Board unanimously found plaintiff guilty of violating Department Rule 2, which prohibits "[a]ny action or conduct which impedes the Department's efforts to achieve its policy and goals or brings discredit upon the Department," and Rule 14, which prohibits "making a false report, written or oral." The Board subsequently discharged plaintiff from her position as a Chicago police officer. Additional facts are set forth as each issue is addressed.

No. 1-09-1272

ANALYSIS

Plaintiff contends it was against the manifest weight of the evidence for the Board to discharge her from her position as a Chicago Police officer. We must disagree.

In reviewing a final decision under the Administrative Review Law (735 ILCS 5/3-101 *et seq.* (West 2002)), we review the administrative agency's decision, not the trial court's determination. *XL Disposal Corp. v. Zehnder*, 304 Ill. App. 3d 202, 207, 709 N.E.2d 293 (1999). Appellate review of an administrative agency's decision regarding a discharge is a two-step analysis. *Siwek v. Police Board*, 374 Ill. App. 3d 735, 737-38, 872 N.E.2d 87 (2007).

First, the reviewing court must determine if the agency's factual findings are contrary to the manifest weight of the evidence. *Kappel v. Police Board*, 220 Ill. App. 3d 580, 588, 580 N.E.2d 1314 (1991). Reviewing courts generally defer to an administrative agency's findings of fact since they are deemed to be *prima facie* true and correct. *Williams v. Board of Review*, 395 Ill. App. 3d 337, 339, 917 N.E.2d 1094 (2009).

Second, the reviewing court must determine if the findings of fact provide a sufficient basis for the agency's conclusion that cause for discharge exists. *Kappel*, 220 Ill. App. 3d at 588-89; *Krocka v. Police Board*, 327 Ill. App. 3d 36, 46, 762 N.E.2d 577 (2001). "An administrative tribunal's finding of 'cause' for discharge is entitled to considerable deference and is to be

overturned only if it is arbitrary and unreasonable or unrelated to the requirements of the service." *Allman v. Police Board*, 140 Ill. App. 3d 1038, 1041, 489 N.E.2d 929 (1986); see also *Walsh v. Board of Fire & Police Commissioners*, 96 Ill. 2d 101, 105-06, 449 N.E.2d 115 (1983) (an "administrative tribunal's finding of 'cause' for discharge commands our respect, and it is to be overturned only if it is arbitrary and unreasonable or unrelated to the requirements of the service") (citing *DeGrazio v. Civil Service Comm'n*, 31 Ill. 2d 482, 489, 202 N.E.2d 522 (1964)).

Plaintiff contends that the Board's decision to discharge her was arbitrary, capricious, and utterly disproportionate to the nature and extent of her conduct. She seeks to support these claims with citations to cases in which police officers whose conduct was arguably worse than hers received less severe sanctions.

"However, cause for discharge can be found regardless of whether other employees have been disciplined differently." *Launius v. Board of Fire & Police Commissioners*, 151 Ill. 2d 419, 442, 603 N.E.2d 477 (1992). The "fact that different individuals have been disciplined differently is not a basis for concluding that an agency's disciplinary decision is unreasonable." *Siwek*, 374 Ill. App. 3d at 738.

Such inferences are appropriate only where the factual circumstances surrounding the discharge of other employees are sufficiently similar to the facts surrounding the discharge at

issue to enable the reviewing court to perform a meaningful and informed comparison. See *Launius*, 151 Ill. 2d at 441-43; *Siwek*, 374 Ill. App. 3d at 738. In the instant case, plaintiff fails to cite any cases in which the factual circumstances surrounding the discharge of other police officers are sufficiently similar to the factual circumstances surrounding her discharge so as to enable our court to perform a meaningful and informed comparison. See, *e.g.*, *Siwek*, 374 Ill. App. 3d at 738.

Plaintiff next contends it was against the manifest weight of the evidence for the Board to discharge her because there was no direct evidence that she was the person who altered her return-to-work status reports. Again, we must disagree.

Although no one on the Board actually observed plaintiff alter her return-to-work status reports, there was circumstantial evidence from which the Board could have reasonably inferred that she did so. "Circumstantial evidence is the proof of certain facts and circumstances from which the fact finder may infer other connected facts which usually and reasonably follow according to the common experience of mankind." *Eskridge v. Farmers New World Life Insurance Co.*, 250 Ill. App. 3d 603, 610, 621 N.E.2d 164 (1993).

The circumstantial evidence establishes that plaintiff had both a motive and the opportunity to alter her return-to-work status reports. In regard to motive, Dr. Garelick testified that when he saw plaintiff on July 28, 2006, he refused her request

for a recommendation to be placed on light duty for six months. The doctor maintained that he was uncomfortable giving such a recommendation in light of his inability to specifically identify a cause of plaintiff's symptoms.

Given the doctor's testimony, it is reasonable to assume that plaintiff wished to avoid being returned to full-duty status. It is also not unreasonable to infer that when the doctor refused plaintiff's request to be placed on light duty for six months, she took matters into her own hands and altered the return-to-work status report to extend her light-duty status "11-12" weeks, rather than the "1-2" weeks recommended by the doctor.

In regard to the opportunity to alter the return-to-work status reports, plaintiff suggests that she did not have an opportunity to alter the reports because they were faxed directly from Dr. Garelick's office to Medical Services. Plaintiff contends that no clear evidence was presented as to how the reports arrived at Medical Services. We disagree.

The testimonial and documentary evidence establishes that the return-to-work status reports at issue were given directly to plaintiff during her appointments with Dr. Garelick, as opposed to being faxed from the doctor's office to Medical Services as plaintiff testified.

Dr. Garelick testified that the practice in his office is to prepare duplicate return-to-work status reports for the patient, where the original is given to the patient to take back the

employer and the carbon copy is retained in the patient's office file. In addition, the return-to-work status reports from plaintiff's file at Medical Services bore no indication that they had been faxed. In contrast, the copies of the reports that were faxed from the doctor's office to Medical Services on prior occasions bore transmission stamps documenting the time and date they were faxed.

Moreover, plaintiff's testimony suggesting that the return-to-work status reports at issue were faxed from the doctor's office to Medical Services was contradicted by the testimony of Officer Beverly Holowach and Officer Erica Jenkins.

Officer Holowach, who is also a nurse at Medical Services, testified that plaintiff came to Medical Services on July 19, 2006, and personally submitted a return-to-work status report from Dr. Garelick, dated July 14, 2006. The officer's testimony was corroborated by a sign-in sheet from Medical Services dated July 19, 2006, bearing plaintiff's signature and employee number.

Officer Jenkins, a registered nurse and case manager at Medical Services, testified that plaintiff came to Medical Services on August 1, 2006, and personally submitted a return-to-work status report from Dr. Garelick, dated July 28, 2006. Officer Jenkins' testimony was also corroborated by a sign-in sheet from Medical Services dated August 1, 2006, bearing plaintiff's signature and employee number.

Resolution of the factual issues in this case required the

No. 1-09-1272

Board to evaluate the credibility of the witnesses. On appeal, we will not disturb the Board's findings which follow therefrom. See *Jackson v. Board of Review of the Department of Labor*, 105 Ill. 2d 501, 513, 475 N.E.2d 879 (1985) ("[t]he weight to be given to the evidence and the credibility of the witnesses are within the province of the administrative agency"); *Cartwright v. Civil Service Comm'n*, 80 Ill. App. 3d 787, 794, 400 N.E.2d 581 (1980) ("[i]t is not the function of a reviewing court *** to reweigh the evidence or redetermine the credibility of witnesses after an administrative decision has been made"). In light of the evidence and given our limited power of review, we cannot say that the Board's factual findings, that plaintiff violated Department Rules 2 and 14 by submitting altered documents to Medical Services, were against the manifest weight of the evidence.

The second and final step in the analysis requires us to determine whether the factual findings are sufficient to support the Board's conclusion that "cause" exists for plaintiff's discharge. As mentioned, an agency's decision as to cause is entitled to considerable deference and will not be reversed unless it is arbitrary, unreasonable, or unrelated to the requirements of service. *Sangirardi v. Village of Stickney*, 342 Ill. App. 3d 1, 17, 793 N.E.2d 787 (2003).

The Board has considerable latitude and discretion in determining what constitutes cause for discharge. *Sangirardi*, 342

-13-

Ill. App. 3d at 17. Illinois courts have defined "cause" for discharge as some "substantial shortcoming which renders the employee's continuance in office in some way detrimental to the discipline and efficiency of the service and which the law and sound public opinion recognize as good cause for his no longer holding the position." *Collins v. Board of Fire & Police Commissioners*, 84 Ill. App. 3d 516, 521, 405 N.E.2d 877 (1980); *Robinson v. Cook County Police & Corrections Merit Board*, 107 Ill. App. 3d 978, 983, 436 N.E.2d 617 (1982).

Our courts have concluded that because the Board "is in the best position to determine the effect of an officer's conduct on the department, the reviewing court is required to give the Board's determination of cause for terminating an officer considerable deference." *Sangirardi*, 342 Ill. App. 3d at 18. In the instant case, we believe that plaintiff's conduct, when viewed in its entirety, warrants the sanction of discharge.

The essence of the misconduct for which plaintiff was found guilty focuses directly upon her lack of honesty. Plaintiff exhibited a lack of honesty by altering her return-to-work status reports and submitting them to Medical Services, and then again by giving testimony under oath that the Board rightly found incredible. "Trustworthiness, reliability, good judgment, and integrity are all material qualifications for any job, particularly one as a police officer." *Village of Oak Lawn v. Human Rights Comm'n*, 133 Ill. App. 3d 221, 224, 478 N.E.2d 1115

-14-

No. 1-09-1272

(1985).

Plaintiff's attempts to avoid full-duty status by misrepresenting a doctor's recommendation could have potentially deprived other officers of light-duty assignments if they became injured or ill. Moreover, "as the guardians of our laws, police officers are expected to act with integrity, honesty, and trustworthiness." *Sindermann v. Civil Service Comm'n*, 275 Ill. App. 3d 917, 928, 657 N.E.2d 41 (1995).

A police officer's credibility is inevitably an issue in the prosecution of crimes and in the Chicago police department's defense of civil lawsuits. A public finding that an officer had lied on previous occasions is detrimental to the officer's credibility as a witness and as such may be a serious liability to the department.

In sum, the Board's decision to discharge plaintiff from her position as a Chicago police officer was not arbitrary, unreasonable, or unrelated to the requirements of service. Accordingly, we affirm the judgment of the circuit court which upheld the Board's order of discharge.

Affirmed.