(No. 106537.—

FRANCIS HALPIN *et al.*, Appellants, v. PETER J. SCHULTZ, Appellee.

*Opinion filed June 18, 2009.—Rehearing denied
September 28, 2009.*

Mark W. Rigazio, of Morris, for appellants Francis Halpin and Scott Halpin.

Peter J. Schultz, of Gardner, appellee *pro se*.

JUSTICE KARMEIER delivered the judgment of the court, with opinion.

Chief Justice Fitzgerald and Justices Freeman, Thomas, Kilbride, Garman, and Burke concurred in the judgment and opinion.

## OPINION

Francis Halpin, Scott Halpin, and the estate of Merville T. Christensen (hereinafter referred to as plaintiffs) own certain farmland in Grundy County. At issue in this case is their right under the Illinois Drainage Code (70 ILCS 605/1—1 *et seq.* (West 2004)) to enter onto neighboring property owned by Peter Schultz for the purpose of replacing underground drainage tile. After Schultz refused to consent to installation of the replacement tile, plaintiffs filed suit against him for declaratory, injunctive and monetary relief. Following a bench trial, the circuit court of Grundy County entered an order permitting plaintiffs to install the replacement tile on defendant's property, but specifying that plaintiffs would be liable for any damages caused by the work they performed. The appellate court reversed, with one justice dissenting, on the grounds that the circuit court's order was fatally defective for failure to comply with the requirements of the Illinois Drainage Code (70 ILCS 605/1—1 *et seq.* (West 2004)). 382 Ill. App. 3d 169. We granted plaintiffs' petition for leave to appeal. 210 Ill. 2d R. 315. For the reasons which follow, we reverse the appellate court's judgment and affirm the judgment of the circuit court.

### Background

Plaintiffs' property was originally part of a single parcel, approximately 100 acres in size, belonging to the Christensen family. The original parcel extended from west to east along Rice Road, terminating on the east at Coster Road. In 1994, the Christensen family sold a 16.85-acre strip of the land where it abutted Coster Road. That strip was developed into a subdivision containing 16 residential lots. The subdivision has a separate water main system and a sanitary sewer system and is divided from north to south by Lake Street, which runs perpen-

dicular to Coster Road, and Oak Street, which is also perpendicular to Coster Road.

After the subdivision was created, the Christensen family retained approximately 28 acres of their original parcel and sold the remaining 65 acres to the Halpins. The Halpins' property is situated due west of the Christensen land, which is, in turn, due west of the new subdivision. All of these parcels are adjacent to but south of property owned by the Schultz family. Defendant Peter Schultz owns the property to the immediate north of the land owned by the Halpins and Christensen. Peter's brother, James, owns land north of Peter's.

The topography of the area is such that the land owned by the Halpins and Christensen has a higher elevation than the Schultzes' land. Moving from southwest toward the northeast, the gradient declines from nearly 593 feet to between 586 and 587 feet where the Schultzes' property begins. From there it further descends to an elevation of less than 584 feet. When it rains, surface water flows downward from the land owned by the Halpins and Christensen in a northeasterly direction across the Schultzes' property.

Plaintiffs' land contains drainage tile to facilitate this drainage. Aligned with the natural flow of surface water, the tile runs from the south toward the north or northeast. After the Christensens' original 100-acre parcel was divided, the Christensens also constructed a duck pond on the land they retained. The pond was installed as part of a conservation reserve program administered by the United States Department of Agriculture. Designed with seepage tiles, the pond served to hold back water during heavy rains in order to protect lower landowners, including the Schultzes, from excessive flooding. It did not alter the general course of the natural drainage from the south to the northeast, but did decrease the volume of water which flowed over the property.

A small depression, or swale, previously ran in an east-to-west direction along the southern edge of Peter Schultz's property near the northern border of the Christensen land. The swale, which was located entirely on Peter Schultz's property, channeled a small amount of surface water eastward into a ditch along Coster Road, from where it would flow north. The swale was ultimately filled in and crops were planted there.

Just as drainage tile is located under the property owned by the plaintiffs, so too does drainage tile run beneath the Schultzes' land. Work performed by a farm drainage contractor confirmed that a run of tile extends from plaintiffs' property and continues across the Schultzes' property in a north-northeast direction. Where, precisely, the tile terminates was never determined. While there are drain tile outlets at the northeast portion of the Schultzes' land where it intersects a roadway, no tests were performed to confirm which, if any, of these is an exit point for the tile extending from plaintiffs' land across the property owned by the Schultzes.

The drainage tile under the parties' property is made of clay. It is 8 inches in diameter where it begins under plaintiffs' land and increases to 10 inches in diameter under the Schultzes' property. The point at which the tile transitions from one size to the other is unknown.

Clay drainage tile is susceptible to breakage and deterioration and must sometimes be repaired or replaced. Testimony presented at trial indicated that the tile under the parties' properties was dug up and repaired numerous times. A farm drainage contractor who examined the existing tile was of the opinion that it should all be repaired using 12-inch corrugated plastic tile. The larger size would accommodate larger volumes of runoff. The change in material was dictated by the fact that clay tile is no longer manufactured. The contractor believed that plastic tile is also preferable because it

is not subject to corrosion and tends to slow the movement of water. In the contractor's view, a new 12-inch tile would not only properly address the drainage needs of the land owned by plaintiffs, but would also improve the drainage of the Schultzes' land.

When Peter Schultz refused to permit plaintiffs to enter onto his property to undertake the repairs, plaintiffs initiated these proceedings in the circuit court of Grundy County. Plaintiffs' complaint named as defendants both Peter and James Schultz. The complaint contained two counts. Count I sought a declaratory judgment that the natural flow of water from plaintiffs' property is over and through the property owned by the Schultzes and that, pursuant to the Illinois Drainage Code (70 ILCS 605/1—1 *et seq.* (West 2004)), plaintiffs have the right to drain water from their property through the Schultzes' property. Plaintiffs further requested an order: (1) granting them the right to access the Schultzes' land to replace and repair drainage tile and (2) prohibiting the Schultzes from interfering with their right "to naturally drain said water, repair the tile or to replace the tile." In count II, plaintiffs sought monetary damages for any crop loss caused by the Schultzes' refusal to allow plaintiffs to access their land to make the necessary repairs to the drainage system.

James Schultz never answered or appeared to contest plaintiffs' claims, and a default judgment was ultimately entered against him. Following various developments not relevant here, the case proceeded to trial against Peter Schultz alone. Peter, who elected to represent himself, testified on his own behalf. He denied that plaintiffs' field tile connected with tile on his land and asserted that the natural flow of surface water across plaintiffs' land is actually toward the east rather than toward the north. Peter challenged plaintiffs' assertion that changes made on their property had not altered the natural flow

of surface water. He claimed there were plans for additional development on plaintiffs' land and complained that those plans would cause further change in the natural course of drainage, sending even more water northward onto his land.

In the course of his testimony, Peter expressed frustration and resentment with the way plaintiffs had addressed the drainage tile issue. He felt that in the course of inspecting the tile system, plaintiffs had damaged his field, his crops and the existing tile and had proceeded without giving him the notice to which he was entitled. He also argued that the repair work contemplated by plaintiffs would change the size and direction of the drainage tile in a manner not authorized by Illinois law.

Peter rested his case without presenting any further witnesses. During closing arguments, he stated that he wanted plaintiffs to run their tile eastward and stay off his land. He also reiterated his claim that no tile from plaintiffs' land tied into tile on his property. Plaintiffs' counsel responded that the evidence had clearly shown that the natural drainage was as plaintiffs had claimed and that they had met their burden of showing that they were entitled to enter onto the Schultzes' property to repair the drainage tile. Plaintiffs' counsel also asserted that because the repairs would benefit the Schultzes, they should be required to pay a proportionate share of the repair costs.

Following the trial, the circuit court entered a written order granting plaintiffs' request for a declaratory judgment. In its order, the court specifically found, *inter alia*, (1) that the natural flow of water is from plaintiffs' property over and through the property owned by the Schultzes, (2) that a clay tile field currently runs through plaintiffs' property and connects to a clay tile field under

the Schultzes' property as plaintiffs contended, (3) that the existing clay tile is old and in need of repair, (4) that the deficiencies in the clay tile were not caused by the inspections undertaken in connection with this litigation, (5) that the repairs could utilize the 12-inch corrugated plastic tile recommended by the field drainage expert who testified at trial, and (6) that pursuant to section 2—6 of the Illinois Drainage Code (70 ILCS 605/2—6 (West 2004)), plaintiffs would be required to pay the Schultzes for any damages they caused when repairing the tile.

Following entry of the foregoing order, plaintiffs moved to reconsider. The basis for their motion was that the court had not addressed their request that the Schultzes be required to pay a portion of the repair costs. The circuit court allowed reconsideration, but denied the additional relief sought by plaintiffs and entered judgment in accordance with its original order.[1]

Peter, continuing to represent himself, appealed to the appellate court. As grounds for his appeal, Peter argued that, contrary to the circuit court's finding, the tile under plaintiffs' property had never been connected to his tile system and that plaintiffs were responsible for altering the natural flow of surface water. Peter further argued, among other things, that plaintiffs had made the drainage situation worse, had impermissibly increased the natural flow of water onto his land, and had entered his property without permission or court authorization to examine the tile system.

The appellate court vacated the circuit court's order in a written opinion. 382 Ill. App. 3d 169. In the appellate court's view, the appeal turned on two questions:

---

[1]Plaintiffs have not pursued the issue of whether the Schultzes should be required to pay a portion of the repair costs, and that aspect of their claim is not before us.

"First, whether the Code provides the authority for a property owner, situated on higher ground, to compel an adjoining agricultural land owner to allow the entry onto his land for use of his privately owned, covered drainage tiles against his wishes, for the private benefit of the upper property owner. Second, whether the circuit court's order complied with the dictates of the Code in this case." 382 Ill. App. 3d at 177.

The appellate court answered the first question in the affirmative, and that issue is no longer in dispute. The point of contention in this proceeding is the court's resolution of the second question. The appellate court determined that the circuit court's order was fatally defective because (1) "[i]t does not appear a statutory bond was ever considered to insure defendant would be paid for damages to his disturbed fields [as required by section 2—3 of the Code (70 ILCS 605/2—3 (West 2004))]," (2) "plaintiffs did not prepare or attach a map to the complaint, as required [by section 2—4 if the Code (70 ILCS 605/2—4 (West 2004))]," (3) plaintiffs failed to establish where the water would be discharged and therefore did not comply with their obligation under section 2—5 of the Code (70 ILCS 605/2—5 (West 2004)) to demonstrate that the covered drain tile would empty into a proper outlet, and (4) the court's order erroneously allows installation of the new tile to commence "before assessing defendant's damages contrary to section 2—6 of the Code [(70 ILCS 605/2—6 (West 2004))]." 382 Ill. App. 3d at 179-80.

In seeking leave to appeal to our court, plaintiffs complained that statutory deficiencies claimed by the appellate court were never raised by Peter himself. Plaintiffs asserted that by relying on those points, which should have been deemed forfeited, the appellate court went beyond its proper function as a court of review and impermissibly assumed the role of advocate for Peter.

Plaintiffs also argued, in the alternative, that the appellate court usurped the role of the circuit court "in such aspects as judging the credibility of the witnesses, evidence, testimony and arguments."

We agree with plaintiffs that the appellate court's judgment is fatally flawed, but for a different reason. We have reviewed the appellate court briefs in this case, and it is true that the grounds invoked by the appellate court when ruling for Peter were not raised by Peter himself. It is also true that our rules provide that points not argued in appellant's brief are waived. 210 Ill. 2d R. 341(h)(7). That rule, however, is an admonition to the parties rather than a limitation on a court of review. Reviewing courts may look beyond considerations of waiver in order to maintain a sound and uniform body of precedent or where the interests of justice so require. *In re Estate of Funk*, 221 Ill. 2d 30, 97 (2006).

There is no indication in the record before us that the appellate court improperly assumed the role of advocate for Peter. Our assumption is that in proceeding as it did, the appellate court merely sought to insure that the precepts of sections 2—3 through 2—6 of the Illinois Drainage Code (70 ILCS 605/2—3 through 2—6 (West 2004)) were properly followed. The problem with the appellate court's analysis is that its application of the foregoing provisions to the circumstances present here was erroneous. Under the clear and unambiguous language of the statute, the various steps which the appellate court believed plaintiffs were required to take under the law, but did not, pertain to the *extension* of covered drains through lands owned by others. In this case, plaintiffs have no intention of extending any drain tile. Their objective is merely to repair a covered drain tile system already in place.

Under the Illinois Drainage Code, if plaintiffs originally paid for construction of the tile system, or are suc-

cessors in title to the persons who did, they have a statutory duty to keep the drainage tile in good repair. 70 ILCS 605/2—6 (West 2004). If the tile system was originally constructed by mutual license, consent or agreement of the adjacent landowners, they have the right to enter "upon the lands upon which the drain \*\*\* is situated and repair the drain." 70 ILCS 605/2—8, 2—11 (West 2004). The record does not disclose which of these situations is present here. In either case, however, nothing in the law requires that plaintiffs repeat the same steps required for extension of drainage tile when, as here, they merely wish to effectuate repairs to tile already in place.

In claiming that the tile system on his property was not part of the same drainage system serving plaintiffs' land, Peter was arguing, in effect, that this was not merely a repair case but involved a new extension which would be subject to sections 2—3 through 2—6 of the Code (70 ILCS 605/2—3 through 2—6 (West 2004)). As we have indicated, however, the circuit court determined that the clay tile field at issue here *was* part of a unified system which served to help drain the natural flow of surface water from plaintiffs' property through and across the Schultzes' property as plaintiffs contended. We will not disturb the trial court's findings of fact unless they are contrary to the manifest weight of the evidence. *1350 Lake Shore Associates v. Healey*, 223 Ill. 2d 607, 623 (2006). A finding is against the manifest weight of the evidence only if the opposite conclusion is clearly evident or if the finding itself is unreasonable, arbitrary, or not based on the evidence presented. *Best v. Best*, 223 Ill. 2d 342, 350 (2006). None of these circumstances are present in this case. The evidence presented to the circuit court, which we summarized earlier in this opinion, amply supports the court's findings.

Where, as here, a case involves repairs to rather than

extensions of a tile system, a landowner may attempt to assert that consideration of the factors which justified initial extension of the drainage tile system across the subject property remains appropriate because topographic or other changes have affected the need for the system. Peter's arguments about the natural course of drainage and the volume of water flowing across his property could be construed as an effort to substantiate that such a change had occurred. Without addressing the validity of this line of argument, we note simply that it could not be sustained in this case. The existence of such changes was rejected by the circuit court, which found that the natural flow of surface water continues to be from plaintiffs' property over and through the Schultzes' property and that the plaintiffs' drainage rights were not affected by the duck pond installed by the Christensens or the 16-lot subdivision abutting Coster Road. Based upon the record before us, we believe these findings were well founded.

Peter has expressed understandable concern that the tile work contemplated by plaintiffs will damage his fields and the existing tile. He need not fear. In a repair case involving the land of another, the plaintiff is liable, by statute, for the actual damages caused by the repair work. 70 ILCS 605/2—6 (West 2004). Where the repair is to drain tiles installed for mutual benefit, the plaintiff is liable for damages only if the damages resulted from negligent performance of the work. 70 ILCS 605/2—11 (West 2004). The circuit court in this case specifically found that plaintiffs would be liable for any damages in accordance with that portion of section 2—6 of the Illinois Drainage Code (70 ILCS 605/2—5 (West 2004)) governing repair cases involving the land of another. That determination has not been challenged by plaintiffs. Peter should therefore be fully compensated for his loss. We note, however, that the damages need not be ascer-

tained as a precondition to the work going forward. Unlike an extension case, where the damages must be ascertained in advance (70 ILCS 605/2—5, 2—6 (West 2004)), the damages in a repair case can be resolved in proceedings conducted after the work is completed. The circuit court's judgment in this case contemplates such proceedings and should not have been set aside by the appellate court.

For the foregoing reasons, the judgment of the appellate court is reversed. The judgment of the circuit court is affirmed.

*Appellate court judgment reversed;*
*circuit court judgment affirmed.*