# Illinois Official Reports

## Appellate Court

*Goral v. Illinois State Board of Education*, 2013 IL App (1st) 130752

| | |
|---|---|
| Appellate Court Caption | BRADLEY GORAL, Plaintiff-Appellant, v. ILLINOIS STATE BOARD OF EDUCATION, THE BOARD OF EDUCATION OF NEW TRIER TOWNSHIP HIGH SCHOOL DISTRICT 203, and LAWRENCE COHEN, Defendants-Appellees. |
| District & No. | First District, Third Division<br>Docket No. 1-13-0752 |
| Filed | December 18, 2013 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | The trial court's order upholding the defendant board of education's decision terminating plaintiff's employment as a teacher based on his response to directives arising from a parent's complaint about plaintiff's response to one of his student's questions in class was affirmed where a fitness-for-duty examination ordered by the school district did not violate the Mental Health and Developmental Disabilities Confidentiality Act, the hearing officer did not violate the School Code by failing to timely schedule the dismissal hearing, plaintiff waived the claim that a new charge was raised during the dismissal hearing based on emails he sent after the school district's notice to remedy by raising the issue for the first time in the trial court, and waiver aside, the emails at issue were merely a continuation of plaintiff's alleged insubordination. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, Nos. 12-CH-26508, 12-CH-30283; the Hon. Mary L. Mikva, Judge, presiding. |
| Judgment | Affirmed. |

Counsel on Appeal

Lisa Madigan, Attorney General, of Chicago (Ann C. Maskaleris, Assistant Attorney General, of counsel), for appellee Illinois State Board of Education.

Franczek Radelet P.C., of Chicago (Shelli L. Anderson and Jacqueline F. Wernz, of counsel), for other appellees.

Panel

JUSTICE MASON delivered the judgment of the court, with opinion. Presiding Justice Hyman and Justice Neville concurred in the judgment and opinion.

**OPINION**

¶ 1     Plaintiff-appellant, Bradley Goral, appeals from an order of the circuit court affirming a decision by defendant-appellee Board of Education of New Trier Township School District 203 (Board) terminating his employment as a teacher at New Trier Township High School District 203 (District). Goral contends that in connection with a fitness-for-duty examination, the District violated the Mental Health and Developmental Disabilities Confidentiality Act (740 ILCS 110/1 *et seq.* (West 2010)) (Act). Goral further argues that the hearing officer violated the Illinois School Code (105 ILCS 5/24-2 (West 2010)) (Code), by failing to timely schedule his dismissal hearing and raising a new charge against him during the administrative hearing and that, in any event, the hearing officer's determination on the new charge is contrary to the manifest weight of the evidence. For the reasons that follow, we affirm.

¶ 2     In this appeal, Goral does not challenge the Board's conduct in issuing him a notice to remedy (based on conduct further described below) or requiring him to attend a psychiatric fitness-for-duty exam. It is also undisputed that Goral failed to (1) attend the exam and (2) notify the District that he would not attend, thus causing the District to incur a $1,000 cancellation fee. Goral contends that the Board's violation of the Act warranted his refusal to comply with its directives.

¶ 3     The parties provide an extensive recitation of the facts leading up to Goral's termination. We recite only so much of the facts as is necessary to provide a framework for discussion of the issues raised in this appeal.

¶ 4     Goral was hired as a chemistry teacher in the District in 1983. In April 2011 an administrator received a complaint from a parent about difficulty a student was having with Goral responding to the student's questions in class. After the science department chair sent Goral a memo summarizing the parent's concerns and asking for Goral's input, Goral initially responded that the complaint was "gibberish and nonsense" and that the parent's comments (which were, at the request of the parent and student, anonymous) were "libelous" and "criminal." Goral demanded an apology from the department chair and that the District pursue

criminal charges against the parent. Goral later demanded the identity of the student and parent indicating that he wanted to file a lawsuit.

¶ 5    Over the next several months, the tenor of Goral's communications and interactions with District administrative personnel escalated. Goral filed a grievance against the District's assistant superintendent and his department chair accusing them of harassing him and of engaging in "patently criminal" conduct. The Board ultimately rejected Goral's appeal from an adverse determination on his grievance.

¶ 6    While his grievance was pending, Goral refused to cooperate with directives from Linda Yonke, the District superintendent, to schedule observations of his classroom and pre- and postobservation conferences. Again, the tenor of Goral's communications–reflected in email exchanges–was accusatory and, increasingly, threatening.

¶ 7    Ultimately, on June 24, 2011, after Goral refused to meet with her regarding the ongoing dispute (instead responding in an email with the subject line, "Commands of June," that his only obligation was to rebuke Yonke, who believed her directives were the "commands of God"), Yonke suspended Goral for five days without pay and informed Goral that she was recommending that the Board issue Goral a notice to remedy. Yonke warned Goral that his violation of the directives in the notice to remedy "could result in further disciplinary action, including termination." Goral responded in an email in which he referred to Yonke as a "broken record" and asserted that he was not required to submit to her authority. In the course of appealing his suspension, Goral advised Yonke and the Board that he had contacted the FBI and that Yonke had "grossly underestimated" how angry he was.

¶ 8    On July 8, 2011, Yonke sent Goral a memo regarding her recommendation that the Board issue him a notice to remedy. Yonke informed Goral that based on his conduct since receiving the parent's complaint, including his angry and irrational responses, she questioned his fitness for duty as a teacher. The memo identified the following four directives incorporated in the notice to remedy:

> "1. You are to interact with your colleagues in a collaborative, professional, respectful and courteous manner. Your colleagues include, but are not limited to, the Superintendent, the Assistant Superintendent for Curriculum and Instruction, the Director of Human Resources and your Department Chair.
>
> 2. You are to follow the work-related directives of your supervisors promptly and in a collaborative, professional, respectful and courteous manner. Your supervisors include, but are not limited to, the Superintendent, the Assistant Superintendent for Curriculum and Instruction, The Director of Human Resources and your Department Chair. This directive includes, but is not limited to, engagement in all designated components of the teacher evaluation process.
>
> 3. You are to be examined by a health professional designated by the Superintendent to evaluate and report to the Board and to the Superintendent regarding your fitness to perform your duties as a teacher in this School District. You are to cooperate fully with the health professional, including, but not limited to, the signing of

any necessary releases, so as to permit the health professional to fully evaluate and report on your fitness to perform your duties.

4. You are to comply with these directives fully, promptly and in a collegial, respectful, courteous and professional manner and to sustain that compliance for the remainder of your employment in this School District."

¶ 9    In response to this memo, Goral sent Yonke and the Board an email with the subject line, "Warning," in which he accused everyone involved of criminal conduct and abuse of authority. Goral further stated that "the potential for prison time is staggering." Yonke informed Goral that this email was another example of the behavior he had been directed to cease. The notice to remedy was later revised to include the communications with the Board within the scope of its directives.

¶ 10    The Board adopted the notice to remedy on July 18, 2011. The notice states that Goral's "failure to comply with the directives *** even to a minor degree, will most likely result in further disciplinary action, including *** suspension without pay and dismissal as a tenured teacher."

¶ 11    On July 26, 2011, in accordance with the notice to remedy, Yonke directed Goral to attend a mental health fitness-for-duty exam. Yonke informed Goral that an appointment had been scheduled with Dr. Marie-Claude Rigaud, a psychiatrist, for August 10. Yonke directed Goral to contact her no later than August 1 to confirm his attendance at the appointment. Attached to the memo was a release that Yonke directed Goral to sign. The release authorized Dr. Rigaud "to share the results of her examination with, and make a report to the Board."

¶ 12    Between July 26 and August 10, Goral, despite repeated inquiries from Yonke, refused to confirm his attendance at the exam. Prior to August 10, Yonke informed Goral that if he failed to attend the exam, she would recommend to the Board that he be suspended and that his employment be terminated. Yonke also informed Goral that the District would incur a significant cancellation fee if he failed to attend the exam. Ultimately, Goral failed to attend the exam and the District incurred a $1,000 cancellation fee.

¶ 13    The Board adopted a resolution dismissing Goral as a tenured teacher at its August 22, 2011, meeting. On September 8, Goral requested a hearing to challenge his dismissal. After an evidentiary hearing held on February 16-17, 2012, the hearing officer, on June 11, 2012, issued a decision recommending to the Board that Goral's termination be upheld. The hearing officer found that Goral's postnotice communications with his supervisors and the Board as well as his refusal to attend the fitness-for-duty exam were blatant violations of the notice to remedy.

¶ 14    On July 16, 2012, the Board adopted a resolution dismissing Goral and incorporating the hearing officer's findings. Goral filed a petition for administrative review, and on February 6, 2013, the circuit court, after holding an extensive hearing on the factual and legal issues presented, affirmed the Board's decision. Goral timely appealed.

¶ 15                                    ANALYSIS

¶ 16    The District first contends that Goral has waived issues regarding the Board's alleged violation of the Act by failing to raise them at the administrative level. See *Chicago Teachers*

*Union, Local 1 v. Chicago School Reform Board of Trustees*, 338 Ill. App. 3d 90, 103 (2003) ("For purposes of administrative review, a party waives review of arguments not raised before the administrative agency."). Although during the administrative proceedings, Goral claimed that the aspect of the notice to remedy requiring him to attend a psychiatric fitness-for-duty exam was "illegal," he never specifically raised arguments regarding any violation of the Act. However, the application of the Act was briefed by the parties and resolved by the circuit court. Further, the application of the Act to the Board's notice to remedy presents a question of law, which we review *de novo*. *City of Belvidere v. Illinois State Labor Relations Board*, 181 Ill. 2d 191, 205 (1998). Consequently Goral's failure to raise issues regarding the Act's application at the administrative level does not impair our ability to resolve them on appeal. Given that waiver is a limitation on the parties and not the court (*Halpin v. Schultz*, 234 Ill. 2d 381, 390 (2009)), we elect to address the issues regarding the Act's application that Goral raises on appeal, with one exception discussed below.

¶ 17     Under the Act, "any record kept by a therapist or by an agency in the course of providing mental health or developmental disabilities service to a recipient concerning the recipient and the services provided" is confidential. 740 ILCS 110/2 (West 2010). The Act defines a "recipient" as "a person who is receiving or has received mental health *** services"; a "therapist" is, in turn, a "psychiatrist, physician, psychologist, social worker, or nurse providing mental health *** services." *Id*. "Mental health services" include, but are not limited to "examination, diagnosis, evaluation, treatment, training, pharmaceuticals, aftercare, habilitation or rehabilitation." *Id.*

¶ 18     Goral contends that the Act's provisions applied to the Board's directive that he attend a fitness-for-duty exam and that, under section 10(a)(4) of the Act (740 ILCS 110/10(a)(4) (West 2010)), the Board was required to obtain a court order before requiring him to attend and authorize disclosure of the results of the exam. Essentially, Goral contends that anytime an employee is required to submit to a fitness-for-duty exam entailing an assessment of the employee's mental health, the Act requires the employer to obtain a court order in advance of the exam authorizing disclosure of the results of the exam, despite the absence of any such requirement in the Code.

¶ 19     The issues raised by Goral under the Act are, at bottom, focused on release of the results of the fitness-for-duty exam and not on the District's authority to require him to submit to the exam. As the Board correctly points out, Goral was not terminated for failing to authorize the release of records relating to the fitness-for-duty exam, but for refusing to attend the exam and for other conduct the hearing officer determined was insubordinate. Thus, the Board contends that Goral's arguments regarding the form of the release attached to the notice to remedy are not properly before us. We agree.

¶ 20     Had Goral attended the exam and raised an issue regarding the scope of the release and the information to which the District was entitled, we would have a concrete context in which to evaluate such a claim. But having failed to attend the exam, Goral's argument regarding the form of the release that accompanied the notice to remedy is clearly an after-the-fact justification for his refusal to participate in the exam. The record does not reveal that Goral ever informed the District that he would attend the exam if the form of release was modified.

On appeal Goral concedes that the District could properly require him to participate in a fitness-for-duty exam and that, even under Goral's reading of the Act, the District could also properly obtain, at a minimum, the ultimate fitness recommendation following the exam without implicating any concerns under the Act. Under these circumstances, we will not permit Goral to raise here issues regarding the form of the release that could have been addressed had Goral attended the exam and raised these issues at the administrative level. Thus, we find that Goral has forfeited arguments, including his estoppel argument, relating to the form of the release and we will not consider them.

¶ 21   The issue remains, however, whether the Act applies to fitness-for-duty exams in which an employee's mental health is evaluated. Goral cites *Sangirardi v. Village of Stickney*, 342 Ill. App. 3d 1 (2003), in support of his contention that the Act applies in this context. In *Sangirardi*, a police officer submitted to a fitness-for-duty exam, but refused to authorize release of the results of the exam, citing the provisions of the Act. *Id*. at 5. The *Sangirardi* court found "no merit" in the police officer's contention that he could refuse, based on the Act's provisions, to release the results of his fitness-for-duty exam to the police chief. *Id.* at 14-15. Mindful of the Act's "strong statement" regarding the "importance of keeping mental health records confidential," this court concluded that a directive from a superior to disclose the results of a fitness-for-duty exam did not compel the release of the police officer's mental health records within the meaning of the Act. *Id.* at 16. Although Goral recognizes that the fitness-for-duty assessment itself may be disclosed, he contends that *Sangirardi* stands for the broader proposition that the Act applies to records beyond the actual fitness assessment generated in connection with fitness-for-duty evaluations.

¶ 22   In a related context, the Illinois Supreme Court in *Johnston v. Weil*, 241 Ill. 2d 169, 185 (2011), determined that no violation of the Act occurred when a court-appointed psychiatrist's report prepared at the direction of the trial court in a child custody dispute was disclosed to other parties. The certified question addressed in *Johnston* considered whether a report prepared pursuant to section 604(b) of the Illinois Marriage and Dissolution of Marriage Act (750 ILCS 5/604(b) (West 2006)), authorizing a trial court to "seek the advice of professional personnel" in child custody matters, constituted confidential information within the meaning of the Act. *Weil*, 241 Ill. 2d at 171, 176. The subject of the report contended that when the professional consulted is a psychiatrist, the Act required that the report remain confidential. *Id*. at 172.

¶ 23   Considering the plain language of the Act, the supreme court observed that its purpose was to " 'preserve the confidentiality of the records and communications of persons who are receiving [and] who have received mental-health services' " (*id.* at 182 (quoting *Novak v. Rathnam*, 106 Ill. 2d 478, 483 (1985))), and that it " 'only applies to situations in which the patient is seeking treatment for a mental health condition' " (*id*. at 183 (quoting *House v. SwedishAmerican Hospital*, 206 Ill. App. 3d 437, 446 (1990))). The court concluded that the court-appointed psychiatrist "was not retained as a therapist to treat plaintiff[ ]," but, rather, was an independent professional "whose sole function was to make an evaluation for the circuit court." *Id.* at 183-84. Because the psychiatrist and plaintiff "were not engaged in a therapeutic relationship," the court found that the Act did not apply. *Id.* at 184.

¶ 24    *Johnston* controls the resolution of Goral's contentions in this case. Goral and Dr. Rigaud were clearly not engaged in a therapeutic relationship within the ambit of the Act. Goral was referred to Dr. Rigaud by the District and Dr. Rigaud was retained, not by Goral, but by the District, specifically for the purpose of evaluating Goral's mental health as it related to his fitness for continued employment. Having acknowledged the District's right to require him to undergo a fitness-for-duty psychiatric exam, it follows that the District was entitled to also require Goral to disclose the results of that exam and, as *Johnston* concluded, the Act was not implicated by that disclosure. Because we conclude that the results of Goral's fitness-for-duty exam were not covered by the Act, we need not address the alternative bases raised by the Board under the Act for rejecting Goral's contentions.

¶ 25    Goral also contends that the Board failed to timely schedule a hearing following his challenge to the proposed termination. At the time the Board adopted the resolution authorizing Goral's termination on August 22, 2011, section 24-12 of the Code required that if a teacher requested a hearing on a proposed dismissal, "the board shall schedule a hearing on those charges before a disinterested hearing officer no less than 15 nor more than 30 days after enactment of the motion." 105 ILCS 5/24-12 (West 2010). Goral contends that because his hearing, ultimately held in February 2012, was not scheduled within the foregoing time limits, the Board lost jurisdiction to terminate him. Effective June 13, 2011, the Code was amended to remove the foregoing time limitations for all dismissals "instituted" after September 1, 2011. Pub. Act 97-8 (eff. June 13, 2011); 105 ILCS 5/24-12(d)(11) (West 2012).

¶ 26    The Board first contends that it is the amended version of the Code that applies to the hearing conducted in Goral's case and, therefore, his timeliness argument is without merit. The Board reasons that Goral's dismissal was not "instituted" until he demanded a hearing and because Goral's demand for a hearing was not requested until September 8, 2011, the amended provisions of the Code apply. We disagree.

¶ 27    A teacher's dismissal is not "instituted" by the teacher's demand for a hearing; it is instituted by the action of the Board in approving a resolution calling for the teacher's dismissal. The Board's resolution is the mechanism under the Code for setting in motion the procedures that ultimately culminate in a determination as to whether the disciplinary action proposed is warranted. See *Board of Education of Community Consolidated School District No. 54 v. Spangler*, 328 Ill. App. 3d 747, 753 (2002) ("[w]hen the board adopts charges to dismiss a teacher, it 'sets the dismissal process in motion' " (quoting *Combs v. Board of Education of Avon Center School District No. 47*, 147 Ill. App. 3d 1092, 1097 (1986))). Thus, because Goral's dismissal was instituted on August 22, 2011, we conclude section 24-12's pre-amendment time limitations apply.

¶ 28    The Board next contends that even if the time limitations in section 24-12 apply, they were substantially complied with under the circumstances presented here. This issue, which asks us to determine the legal effect of a given set of facts, presents a mixed question of law and fact, which we review under the clearly erroneous standard. *AFM Messenger Service, Inc. v. Department of Employment Security*, 198 Ill. 2d 380, 391 (2001) (citing *City of Belvidere*, 181 Ill. 2d at 205). An agency's determination on a mixed question of fact and law will be overturned only if it is "clearly erroneous." *Id.* A determination is clearly erroneous if, after

reviewing the record, the court is left with the "definite and firm conviction" that the agency made a mistake. *Id*. at 393.

¶ 29 Here, the hearing officer concluded that in a draft bill of particulars delivered to Goral on August 18, 2011, Yonke scheduled a hearing on Goral's dismissal for September 20, 2011, or 29 days after the August 22, 2011, resolution by the Board. As Goral points out, it is the District's obligation to schedule a hearing under section 24-12. There is no evidence in the record that the parties did not intend to comply with the originally scheduled date nor is there any requirement in the Code that a hearing date be included in the final resolution adopted by the Board. See 23 Ill. Adm. Code 51.30, amended at 29 Ill. Reg. 10108, 10113 (eff. June 30, 2005) (providing that "[a] motion approved by a board pursuant to Section 24-12 of the School Code *** *may* include a scheduled date for a hearing" (emphasis added)). Therefore, we cannot say that the hearing officer's determination that there was "substantial compliance" with section 24-12's time requirements for scheduling a hearing is clearly erroneous.

¶ 30 Furthermore, Goral did not timely object to the delay in scheduling the hearing. Although it would have been apparent by the end of September that the 30-day window for scheduling a hearing had passed, Goral first raised an objection to the timeliness of the hearing in a January 27, 2012, letter to the hearing officer. Between September 2011 and January 27, 2012, Goral participated without objection in the selection of a hearing officer and the prehearing process. Our supreme court has held that a party may waive an objection to the timeliness of a hearing scheduled under section 24-12. *Grissom v. Board of Education of Buckley-Loda Community School District No. 8*, 75 Ill. 2d 314, 324 (1979). Moreover, because the pre-amendment time limitations in section 24-12 are not jurisdictional, a failure to adhere to the statutory timeline did not, in any event, divest the Board of jurisdiction. See *Watts v. Board of Education, School District No. 189*, 125 Ill. App. 3d 532, 539-40 (1984); *Rolando v. School Directors of District No. 125*, 44 Ill. App. 3d 658, 663 (1976). For these reasons, we reject the timeliness of Goral's hearing as a basis for reversal.

¶ 31 Goral claims error in the hearing officer's reliance on his email communications following the notice to remedy on the grounds that those communications were not identified in the bill of particulars and, even if they could be considered, the hearing officer's conclusion that they violated the notice to remedy is contrary to the manifest weight of the evidence. The record reveals that Goral did not object to evidence of his post-notice to remedy emails during the administrative hearing, nor did he raise the issue of the alleged "new charge" in his complaint for administrative review. In his complaint in the circuit court, Goral only raised the issue of whether the hearing officer's findings in this regard were contrary to the manifest weight of the evidence. Therefore, we conclude that Goral's claim that a "new charge" was raised in his administrative hearing has been waived. *Lehmann v. Department of Children & Family Services,* 342 Ill. App. 3d 1069, 1078 (2003); *North Avenue Properties, LLC v. Zoning Board of Appeals*, 312 Ill. App. 3d 182, 185 (2000).

¶ 32 Moreover, Goral's emails following the notice to remedy were a continuation of the pattern of insubordination that prompted the notice to remedy in the first place. In response to an email from Yonke on August 8, 2011, advising Goral that the time of his appointment with Dr. Rigaud had been changed and to contact her if he had any questions, Goral wrote: "Yes, I have

two questions actually. Do I have the right in this school to be treated justly under the law and under Board Policy? Under the law and under Board Policy, do I have a right to be treated equally to those who have formal authority over me at work?" Goral also informed Yonke in another email the same day that the Board actions were "not authoritative." Finally, on August 17, 2011, Goral wrote to the Board, which had upheld his 5-day suspension, and informed them: "Your suspension of me is a violation of the law ***. I expect you to revoke the suspension in writing, by certified mail, by Monday, August 22 at 7:30 a.m., which is the normal time I leave for work ***."

¶ 33     Between issuance of the notice to remedy on July 18, 2011, and the administrative hearing, Goral was advised that the tenor of his emails was deemed violative of the notice to remedy's directive that he interact with his supervisors in a "collaborative, professional, respectful and courteous manner." In the notice to remedy Goral was also advised that his failure to comply with its directives, "even to a minor degree," could result in his termination. Consequently, Goral was "fairly apprised" of the deficiencies that the Board believed warranted his termination (see *Wade v. Granite City Community Unit School District, No. 9*, 71 Ill. App. 2d 34, 36 (1966)), and he cannot claim surprise that the subject of his post-notice to remedy emails was addressed at his administrative hearing. Nor is the hearing officer's determination that those communications violated the notice to remedy contrary to the manifest weight of the evidence.

¶ 34     Finally, wholly apart from the post-notice to remedy emails, Goral's refusal to attend the fitness-for-duty exam was clearly insubordinate and provides an independent basis, standing alone, for his termination. For these reasons, we conclude that the Board's decision to terminate Goral must be affirmed.

¶ 35     Affirmed.