2020 IL App (2d) 190983
No. 2-19-0983
Opinion filed September 23, 2020

_____

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT
_____

| | | |
|---|---|---|
| LOUIS RAFTI, | ) | Appeal from the Circuit Court |
| | ) | of McHenry County. |
|     Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | No. 18-MR-880 |
| | ) | |
| THE DEPARTMENT OF HUMAN | ) | |
| SERVICES, Division of | ) | |
| Rehabilitation Services, | ) | Honorable |
| | ) | Thomas A. Meyer, |
|     Defendant-Appellee. | ) | Judge, Presiding. |

_____

JUSTICE BRIDGES delivered the judgment of the court, with opinion.
Justices McLaren and Jorgensen concurred in the judgment and opinion.

**OPINION**

¶ 1  Plaintiff, Louis Rafti, was found eligible to receive vocational rehabilitation services from defendant, the Department of Human Services Division of Rehabilitation Services (Department). Rafti thereafter sought $5017 in funding to enroll in a paralegal certificate program. The Department denied the request, finding that additional college training was not necessary for Rafti to obtain employment as a paralegal, because Rafti had a Juris Doctor degree and had practiced law in California for many years. Rafti filed an administrative appeal, and after a hearing, the hearing officer issued a final administrative decision affirming the Department's determination. Rafti sought judicial review, and the circuit court of McHenry County affirmed. Rafti timely

appeals *pro se*. The issue on appeal is whether the hearing officer's decision, affirming the Department's determination that the paralegal program was not necessary for Rafti to obtain employment as a paralegal, was clearly erroneous. We affirm.

¶ 2                                    I. BACKGROUND

¶ 3     On February 23, 2018, Rafti was informed via a letter from the Department that he had been found eligible to receive vocational rehabilitation services. The Department advised Rafti that, although he had previously submitted information to the Department about obtaining both real estate and paralegal training, Rafti must choose one career objective and submit all the required documentation, which was noted on an attached checklist. Thereafter, the request would be submitted to a Department supervisor for review.

¶ 4     On May 15, 2018, Rafti submitted a letter to the Department, requesting $5017 in funding to pay for his enrollment in the "McHenry County College Paralegal Certificate Program" (the paralegal program). Rafti included his resume, which indicated that he graduated from Southwestern Law School in July 2004, passed the California bar exam in February 2005, and practiced public interest law until 2010. Rafti also detailed numerous "legal and personal achievements" not included on his resume. Rafti stated that "[a]lthough it has been a number of years since [he] had to stop practicing law because of [his] health, during the interim, [he] ha[s] had the opportunity to maintain and utilize [his] legal skills." He described serving as "Trustee of [his] family's Trust" and "successfully litigating a Complaint for Administrative Review in *pro se* [*sic*], against the Illinois State Toll Highway Authority. [It] involved an entirely new area of legal research, regarding this area of the law in particular, and Illinois law in general."

¶ 5     On June 20, 2018, Rafti submitted an "addendum" to the May 15 letter. In the letter, Rafti explained that, "[a]lthough [he] completed law school, passed the bar exam, and practiced law in

California for five years," he became disabled in 2010 and was no longer able to work. A " 'clerical error' " in January 2014 resulted in a nine-month loss of Social Security disability payments. During that time, Rafti was unable to pay his bar fees or the cost of required continuing legal education and, as a result, lost his license to practice law. Rafti moved to Illinois, but he could not afford to study for and take the Illinois bar exam. He asserted that, even though the cost to become a licensed attorney in Illinois would be less than the cost of the paralegal program, his disability made success in reentering the workforce as an attorney unlikely.

¶ 6    On June 28, 2018, the Department notified Rafti, via letter, that his request for additional college training had been reviewed by a supervisor and denied. According to the letter, the supervisor found that "[c]ollege training is not necessary for [Rafti] to obtain employment" and that "the Juris Doctor degree *** should open more opportunity than a Para-Legal Studies Certificate."

¶ 7    On July 26, 2018, Rafti appealed the Department's decision to deny him funding to enroll in the paralegal program. In his "Brief in Support of Appeal," Rafti argued that the paralegal certificate was "necessary" because he needed to learn "technical functions" such as electronic document handling, be retrained in legal research and writing, and learn Illinois law. As evidence, Rafti submitted (1) the February 23, 2018, letter from the Department finding him eligible for services, (2) his June 20, 2018, addendum, and (3) a previously filed grievance against the McHenry County College, Department of Financial Aid, alleging disability discrimination when he was denied a front desk position. He also argued that the Department had not developed his individualized employment plan within the requisite 90 days.

¶ 8    The Department submitted a response and several exhibits. The Department explained that, although it agreed with Rafti's decision to seek employment as a paralegal, Rafti failed to present

any evidence that he could not do so with his existing skills and qualifications. The Department further stated that Rafti refused to attempt to find a paralegal job without first obtaining the paralegal certificate.

¶ 9     A telephonic hearing took place on September 6, 2018. Rafti was present *in propria persona*. Rehabilitation counselor Joseph O'Donnell and Department supervisor Maria Martinez-McKinley appeared for the Department.

¶ 10     Rafti testified that the preponderance of the evidence showed that the Department's denial of his request to fund paralegal training violated the law and was unsupported by documentation. Consistent with the arguments in his brief, Rafti testified that he did not possess the necessary skills to become a paralegal. Rafti testified that he has HIV/AIDS, chronic kidney disease, and diabetes and, as a result, has been disabled for the past eight years and unable to work. He stated that he was also disabled for three years beginning in March 1990. He argued that he was not experienced with the required technology, such as electronic document handling and online legal research programs. He also argued that he needed to "refresh" his research and writing skills and learn Illinois law. Rafti denied being told by the Department to apply for paralegal positions. He also argued that the Department failed to provide him with an individualized plan for employment within 90 days as required.

¶ 11     Martinez-McKinley testified for the Department. She stated:

"Mr. Rafti[,] just based on this hearing you have proven to me that you have the ability to work as a paralegal. You've demonstrated your ability to understand written information, understand spoken information, do research, present clearly, read and understand, write clearly. You've demonstrated that you have the ability to work as a paralegal. You've not demonstrated that you seeked [*sic*] employment and you haven't been able to get it. And

so if our purpose is to help individuals with disabilities obtain entry level employment and you're saying at this point the entry level employment that you are seeking is to work as a paralegal, [the Department's] *** position, [and] Mr. O'Donnell's position[,] is that you have a skill set that can afford you the ability to work as a paralegal and that we should try and obtain employment for you as a paralegal."

Martinez-McKinley noted that the Department's decision to deny Rafti funding was based on the fact that he had obtained a law degree and that he had practiced law for over six years in California. She asserted that Rafti's "experience practicing law and experience conducting himself in a hearing, [and] information that *** he's filed grievances with [McHenry County College] ***, [and] sued Illinois Department of Transportation ***[,] all goes to show that Mr. Rafti has the skill set to work in a paralegal environment." Martinez-McKinley testified that "there's nothing that we have in your file that lets me know that, one, employers are telling you, well, in order for me to hire you as a paralegal you have to have a paralegal certificate." She stated that "some employers prefer to do their own training." She reaffirmed: "I don't have anything that tells me that you've tried to get employment as a paralegal and you can't because you don't have a paralegal certificate."

¶ 12    Martinez-McKinley also testified that the Department had multiple resources available to assist Rafti in securing employment. Martinez-McKinley testified that O'Donnell could help Rafti apply for the state's Successful Disability Opportunity Program, which would place Rafti's name on a list of qualified paralegals for all state positions. Martinez-McKinley testified that O'Donnell was "an expert at submitting this information" and that he could help Rafti get qualified and graded as a paralegal for state employment. While testifying, Martinez-McKinley found four paralegal postings on the State website. Martinez-McKinley explained that, once Rafti was qualified for a

position, he would be contacted for the interview. Rafti responded: "[T]hat sounds promising, but I still think that I'd rather go with something that I think is a sure bet, which is get the training for that." Martinez-McKinley read the job description for one of the postings, which included the following minimum requirement: " 'Requires knowledge, skill and mental development equivalent to completion of four years of college with core work in such areas as legal, [inaudible], English, statistics or directly related course work. Preferably requires a Paralegal Certificate.' " When Rafti asked how he would compete for the job without a paralegal certificate, the hearing officer responded: "You're going to compete with your Juris Doctor degree." Rafti stated:

"Well, under the circumstances, it's much more assured that if I complete the program I'm going to get a job than if I don't complete the program under my particular circumstances. And therefore I'm saying that it's necessary and to not do it is not basically the intent of what [the Department] is supposed to do. And as my experience in [the] legal field has presented me it's never in anyone's interest to give up a substantial right. So I mean I'm asserting my right to this program. That would be my preference."

¶ 13    On September 26, 2018, the hearing officer affirmed the Department's denial of funding for Rafti to enroll in the paralegal program, stating that Rafti "has not demonstrated, by a preponderance of the evidence, that further training would reduce an impediment to gaining employment." The hearing officer noted that Rafti "had not applied for any paralegal jobs" and that he "has a law degree and previous work history related to the field he wishes to pursue."

¶ 14    On November 27, 2018, Rafti filed a "1st Amended Pro Se Complaint for Administrative Review," alleging that the hearing officer's decision was clearly erroneous. Rafti argued that (1) the evidence demonstrated that paralegal training was necessary for him to overcome impediments to employment, (2) the hearing officer's decision was based primarily on the

Department's unsupported statements that " '[Rafti] was formerly an attorney, and is therefore now able to obtain employment as a paralegal,' " (3) the Department failed to provide Rafti with an individualized plan for employment within 90 days, and (4) the hearing officer's decision violated "various and many State and Federal Statutes and Regulations that govern the Vocational Rehabilitation Program."

¶ 15    Following briefing and a hearing, the circuit court of McHenry County affirmed the hearing officer's decision. The court explained that Rafti had not presented evidence that the paralegal certificate was necessary and that, to the contrary, the Department's unrebutted testimony showed that Rafti already possessed the skills necessary to secure employment as a paralegal. The court concluded that the Department's decision was "not against the manifest weight of the evidence."

¶ 16    This timely appeal followed.

¶ 17                II. ANALYSIS

¶ 18    The Rehabilitation Act of 1973 (the Federal Act) (29 U.S.C. § 701 *et seq.* (2018)) authorizes federal grants to States that assist individuals living with disabilities to "prepare for and engage in gainful employment" (*id.* § 720(a)(2)(B)). To qualify for these grants, States must submit plans for the creation and implementation of "individualized plan[s] for employment" (IPE) for eligible individuals. *Id.* § 721(a)(9)(A). The IPE must contain, among other things, an "employment outcome," which should be "consistent with the individual's unique strengths, resources, priorities, concerns, abilities, capabilities, interests, and informed choice of the eligible individual, consistent with the general goal of competitive integrated employment." *Id.* § 722(b)(4)(A). The IPE must also identify the specific services "needed to achieve the employment outcome." *Id.* § 722(b)(4)(B)(i)(I); see *id.* § 723(a) (vocational rehabilitation services are those "necessary to assist an individual with a disability in preparing for [and] securing *** an

employment outcome that is consistent with the strengths, resources, priorities, concerns, abilities, capabilities, interests, and informed choice of the individual"). Although the individual must be allowed to "exercise informed choice" in developing the IPE and must ultimately agree to it, the State's vocational rehabilitation counselor must approve the IPE. *Id.* § 722(b)(3)(B); see 89 Ill. Adm. Code 572.50(a) (2018).

¶ 19    Illinois's provision of vocational rehabilitation services is governed by the Rehabilitation of Persons with Disabilities Act (State Act) (20 ILCS 2405/0.01 *et seq.* (West 2018)), which authorizes the Department to cooperate with the federal government in providing these services. *Id.* § 3(a). The State Act directs the Department "[t]o prescribe and supervise such courses of vocational training and provide such other services as may be *necessary* for the habilitation and rehabilitation of persons with one or more disabilities." (Emphasis added.) *Id.* § 3(b). Consistent with federal requirements, the Department must develop an IPE for employment before it can provide services to an eligible individual. 89 Ill. Adm. Code 590.20 (2012). Generally, it must do so within 90 days of deeming the individual eligible. 89 Ill. Adm. Code 572.50(d) (2018). To begin, the Department conducts an assessment, during which it works with the "customer"[1] to determine an "employment outcome" and "the vocational rehabilitation services *needed* to achieve the employment outcome." (Emphasis added.) 89 Ill. Adm. Code 553.100(b), (c) (2001). Then, in collaboration with the customer, the Department creates an IPE, which "identifies the program of services that will assist the individual to achieve an employment outcome consistent with the customer's unique strengths, resources, priorities, concerns, abilities, capabilities, career interests,

---

[1] " 'Customer' means a person who has requested, been referred for, is receiving, or has received any DHS-DRS services." 89 Ill. Adm. Code 521.20 (2018).

and informed choices." 89 Ill. Adm. Code 572.30(b) (2011). "The customer's case record must contain documentation and justification for any decision to provide, deny, or alter any services." *Id.* § 572.100.

¶ 20    As part of the services provided by the Department, "[v]ocational, technical, or academic training may be available to a customer *** as appropriate." 89 Ill. Adm. Code 590.220 (2012). If a customer with prior postsecondary training seeks another degree, the Department will evaluate the following information "to determine if there is a need for further post-secondary training that would lead to employment: A) number of credit hours previously earned, B) degree and certifications currently held, C) previous work history related to degree held, and D) reasons the customer is not employed with current qualifications." *Id.* § 590.220(a)(2).

¶ 21    If a customer disagrees with a determination denying him services, he may file an administrative appeal. 89 Ill. Adm. Code 510.20(a) (2003). Before the hearing officer, the customer "shall have the responsibility to prove by the preponderance of the evidence that the action or inaction by [the Department] was not in accordance with federal or State laws or regulations, against [the Department's] policy, *** or inappropriate for the customer." *Id.* § 510.105(f). The hearing officer's decision is the agency's final administrative decision. *Id.* § 510.120(a)(2); see *Williams v. Department of Human Services Division of Rehabilitation Services*, 2019 IL App (1st) 181517, ¶ 18.

¶ 22    Further appeal "must be made to the courts by common law writ of certiorari." 89 Ill. Adm. Code 510.120(c) (2003); *Williams*, 2019 IL App (1st) 181517, ¶ 18. "The nature and extent of judicial review under *certiorari* is virtually the same as review under the [Administrative] Review Law [(735 ILCS 5/3-101 *et seq.* (West 2018))]." (Internal quotation marks omitted.) *Williams*, 2019 IL App (1st) 181517, ¶ 19. "[C]ourts are 'limited to [considering] *** the evidence submitted

in the administrative hearing and may not hear additional evidence.' " *Id.* (quoting *King's Health Spa, Inc. v. Village of Downers Grove*, 2014 IL App (2d) 130825, ¶ 32). And, " '[a]s a general rule, issues or defenses not raised before the administrative agency will not be considered for the first time on administrative review.' " *Id.* (quoting *Carpetland U.S.A., Inc. v. Illinois Department of Employment Security*, 201 Ill. 2d 351, 396-97 (2002)).

¶ 23    Our standard of review depends on the issue presented. *Id.* ¶ 21. The issue here presents a mixed question of fact and law because, given the facts, the issue is whether the Department correctly denied Rafti's request per the applicable regulations. See *id.* ¶ 22 (finding that "the hearing officer's determination that [the plaintiff's] request for services did not meet the requirements of the program as set forth in the statutory and regulatory scheme [citation], present[ed] a question of fact and law"). Mixed questions of fact and law are reviewed "under the largely deferential clear error standard." *Id.* ¶ 21.[2] An agency's decision is clearly erroneous only if, after viewing the entire record, the court has a " 'definite and firm conviction that a mistake has been committed.' " *Id.* ¶ 22 (quoting *Cinkus v. Village of Stickney Municipal Officers Electoral Board*, 228 Ill. 2d 200, 211 (2008)).

¶ 24    We turn to the merits. Rafti contends that he introduced evidence sufficient to show that the paralegal training program was "necessary for him to overcome the impediment to employment posed by disability discrimination." We disagree. Although Rafti claims that the training will teach

---

[2] Rafti argues that the trial court erred by applying the manifest-weight-of-the-evidence standard when reviewing the hearing officer's decision. He is correct. Nevertheless, any error is harmless, because this court reviews the hearing officer's decision, not the trial court's decision. See *Sarkis v. City of Des Plaines*, 378 Ill. App. 3d 833, 836 (2008).

him skills specific to paralegals and Illinois law, as well as refresh his legal research and writing skills, Rafti failed to establish by a preponderance of the evidence that such training was "necessary" (20 ILCS 2405/3(b) (West 2018)).[3] The evidence established that Rafti had a law degree and had practiced law for many years until 2010. Martinez-McKinley testified that Rafti's submissions to the Department demonstrated his abilities to work as a paralegal. Indeed, in his May 15, 2018, letter to the Department requesting funding to enroll in the paralegal program, Rafti detailed numerous "legal and personal achievements" not included on his resume. Rafti stated that, "[a]lthough it has been a number of years since [he] had to stop practicing law because of [his] health, during the interim, [he] ha[s] had the opportunity to maintain and utilize [his] legal skill." Rafti described serving as "Trustee of [his] family's Trust" and "successfully litigating a

---

[3] Rafti seems to challenge the Department's interpretation of the terms "necessary" (see 20 ILCS 2405/3(b) (West 2018)) and "need for" (see 89 Ill. Adm. Code 590.220(a)(2) (2012)), arguing that these terms "should be interpreted in a manner consistent with the terms 'competitive integrate employment' and [to be] 'qualified' for" as set out in the Federal Act and the Americans with Disabilities Act of 1990 (42 U.S.C. § 12001 *et seq.* (2018)). However, Rafti did not challenge the Department's construction of these terms below and thus has forfeited the issue. See *Nwaokocha v. Illinois Department of Financial & Professional Regulation*, 2018 IL App (1st) 162614, ¶ 66. In any event, the Department does not disagree that it must provide services that are necessary for individuals to be qualified and competitive for their approved employment outcome. The Department disagrees with only Rafti's contention that acquiring a paralegal certificate is necessary for Rafti to reach his employment goal.

Complaint [f]or Administrative Review in *pro se* [*sic*], against the Illinois State Toll Highway Authority. [It] involved an entirely new area of legal research, regarding this area of the law in particular, and Illinois law in general." Martinez-McKinley also noted that Rafti had filed a grievance against McHenry County College, which demonstrated Rafti's proficiencies in legal writing and analysis. This evidence documents Rafti's qualifications and abilities and supports the Department's justification for denying him funding for paralegal training.

¶ 25    Rafti argues that a paralegal position demands certain technical skills, such as electronic document management and the use of computerized research programs. He contends that without the requisite training he would not be qualified for a paralegal position. However, during the hearing, Martinez-McKinley identified four postings on the State of Illinois website for paralegal positions, and she listed the minimum requirements. To be sure, the job listing that Martinez-McKinley read on the record stated a preference for a paralegal certificate; however, it was not a requirement. Evidence that training may be useful does not establish by a preponderance of the evidence that such training is necessary. Indeed, as the hearing officer noted, Rafti's legal degree and experience as a practicing attorney qualified him for the positions.

¶ 26    Rafti also argues that he presented evidence of "the pervasiveness of disability discrimination in employment," pointing to a grievance he filed against McHenry County College, alleging disability discrimination based on its failure to hire him for a front desk position through the college's work-study program. However, evidence that Rafti was not hired for a work-study job does not establish the necessity for paralegal training.

¶ 27    Rafti also argues that the Department improperly based its decision on information obtained outside the record, such as the job postings referenced by Martinez-McKinley. However, Rafti did not object to the consideration of this evidence during the hearing; thus, he has forfeited

any argument as to whether the evidence was properly considered. See *Goral v. Illinois State Board of Education*, 2013 IL App (1st) 130752, ¶ 31 (failure to object to evidence during the hearing or raise the issue in a complaint for administrative review results in forfeiture).

¶ 28    Rafti also seems to argue that expert testimony was required to support the Department's conclusion that Rafti was qualified to work as a paralegal. He asserts that there was no indication that either O'Donnell or Martinez-McKinley had any experience with legal employment. To be sure, "where an administrative agency makes factual determinations involving technical concepts unique to its expertise, expert testimony must be introduced into the record supporting the agency's position." (Emphasis omitted.) *Chase v. Department of Professional Regulations*, 242 Ill. App. 3d 279, 285 (1993)); see *Heabler v. Illinois Department of Financial & Professional Regulation*, 2013 IL App (1st) 111968, ¶ 19 (expert in private detective industry testified as to whether detective's conduct was unethical, unprofessional, or dishonorable in light of the custom and practice in the industry). However, the Department's determination that Rafti was qualified to work as a paralegal did not involve "technical concepts unique to its expertise." See *Chase*, 242 Ill. App. 3d at 285. Thus, no expert testimony was required. As noted, the Department's determination was supported at the hearing with evidence concerning Rafti's education and abilities, in conjunction with several job postings for paralegal positions showing that Rafti was well qualified for a paralegal position.

¶ 29    Finally, we note that Rafti does not argue on appeal that the Department violated its obligations to provide him with an IPE within 90 days. See 89 Ill. Adm. Code 572.50(d) (2018). Therefore, he has forfeited the argument. See Ill. S. Ct. R. 341(h)(7) (eff. May 25, 2018) ("Points not argued [in the opening brief] are forfeited and shall not be raised in the reply brief, in oral argument, or on petition for rehearing.").

¶ 30 Based on the foregoing, after a review of the entire record, we cannot say that the hearing officer's decision to affirm the Department's denial of funding for Rafti to enroll in the paralegal program was clearly erroneous.

¶ 31                                      III. CONCLUSION

¶ 32 For the reasons stated, we affirm the judgment of the circuit court of McHenry County.

¶ 33 Affirmed.

---

**No. 2-19-0983**

---

| | |
|---|---|
| **Cite as:** | *Rafti v. Department of Human Services*, 2020 IL App (2d) 190983 |

---

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of McHenry County, No. 18-MR-880; the Hon. Thomas A. Meyer, Judge, presiding. |

---

| | |
|---|---|
| **Attorneys for Appellant:** | Louis A. Rafti, of Woodstock, appellant *pro se*. |

---

| | |
|---|---|
| **Attorneys for Appellee:** | Kwame Raoul, Attorney General, of Chicago (Jane Elinor Notz, Solicitor General, and Priyanka Gupta, Assistant Attorney General, of counsel), for appellee. |

---